## STATE OF CONNECTICUT *v.* THOMAS BUSH
### (11264)

DUPONT, C. J., O'CONNELL and HEIMAN, Js.

Argued September 27—decision released December 21, 1993

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. By substitute information, the state charged the defendant with the crimes of unlawful possession with intent to sell narcotics by a person who is not drug dependent in violation of General Statutes § 21a-278 (b) and conspiracy to commit conduct constituting a "violation of [General Statutes] Sections 21a-278 (b), 21a-277 (a) and (c)" in violation of General Statutes § 53a-48. The jury found the defendant guilty of both counts.

The defendant appeals from the judgment, alleging that the trial court improperly (1) admitted the evidence gathered from the issuance of two search warrants, (2) failed to charge the jury that it must unanimously determine which underlying crime or crimes the defendant conspired to commit, (3) used language in the jury instructions that favored the state, and (4) denied the defendant access to a state's witness' psychiatric records after an in camera inspection by the court.

I

The defendant claims that the evidence gathered from the issuance of two search warrants should be suppressed because the search warrant affidavits lacked probable cause.[1] The trial court disagreed, as do we.

---

[1] A defendant must have a legitimate expectation of privacy in the area authorized to be searched by a warrant in order to challenge whether probable cause exists for the issuance of the warrant. *State* v. *Rodriguez,* 223 Conn. 127, 132, 613 A.2d 211 (1992). "The determination of whether the defendant had a reasonable expectation of privacy in the area searched

A magistrate issued four search warrants for three different locations: (1) Father Panik Village, building 9, apartment 210; (2) 79 Trowel Street, first and second floors;[2] and (3) 202 Sheridan Street.[3] The defendant claims that the evidence obtained from the searches of apartment 210 and the first floor of 79 Trowel Street was improperly admitted.[4]

The affidavits for apartment 210 and the first floor of 79 Trowel Street contained various statements and allegations. The defendant allegedly paid the lessee of apartment 210, Michael Vines, for the use of the apartment to store, package, and distribute drugs and to stash money for his drug operation.[5] The defendant

requires a two part factual inquiry: first, whether the defendant has exhibited an actual subjective expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable." Id. The defendant bears the burden of establishing the facts necessary to demonstrate a reasonable expectation of privacy. *State* v. *McLucas,* 172 Conn. 542, 546, 375 A.2d 1014, cert. denied 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977).

At trial, the defendant claimed that standing could be established from the four corners of the affidavits. The state disagreed. The trial court ruled, "without even reaching the issue of standing," that there was probable cause for the warrants. We conclude that a warrant affidavit can establish the facts necessary to demonstrate a reasonable expectation of privacy. See *State* v. *Rodriguez,* supra, 132–33. Here, the affidavits for apartment 210 and 79 Trowel Street established, among other things, that the defendant used apartment 210 as a business location and that his father owned 79 Trowel Street. At oral argument on appeal, both the state and the defendant agreed that this court need not review the trial court's failure to determine whether the defendant had standing unless we found infirmity with the warrants. For the purposes of this appeal, we assume standing exists.

[2] Separate search warrants were issued for the first and second floors of 79 Trowel Street.

[3] The defendant allegedly lived at 202 Sheridan Street with his girlfriend, Lori Smith, who rented the apartment.

[4] The trial court suppressed the evidence obtained from the search of the second floor of 79 Trowel Street, and the defendant does not challenge the search of 202 Sheridan Street.

[5] Dealers for the drug operation allegedly sold drugs out of the doorway leading to apartment 210 and resupplied themselves with drugs from the apartment.

allegedly used 79 Trowel Street to store and package drugs and to stock weapons for the drug operation.[6] The 79 Trowel Street warrant was issued after the search of apartment 210, and its affidavit contained information obtained from the apartment 210 search.

The information in the warrant affidavits was provided primarily by a confidential informant and verified in part by other anonymous or confidential sources. When a search warrant affidavit is based on information provided by confidential informants, we apply the "totality of the circumstances" test to determine whether probable cause for the search exists. *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991). Under this standard, the informant's basis of knowledge and reliability are relevant. Id., 552.

"When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists." Id., 544.

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." (Internal quotation marks omitted.) Id., 548. In determining whether probable cause exists, the magistrate

---

[6] The defendant's father owned 79 Trowel Street. An alleged coconspirator, David Hawkins, listed 79 Trowel Street as his home address.

must "make a practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Internal quotation marks omitted.) *State* v. *Johnson,* 219 Conn. 557, 563, 594 A.2d 933 (1991).

On review of a magistrate's finding that probable cause existed for issuing a warrant, we must determine whether the affidavit presented a substantial factual basis for that conclusion. *State* v. *Johnson,* supra, 565; *State* v. *Barton,* supra, 552. In determining whether the affidavit provided such a basis, we can consider only the information that was actually in the affidavit presented to the magistrate. *State* v. *Barton,* supra, 548; *State* v. *Anziano,* 26 Conn. App. 667, 672, 603 A.2d 415 (1992). This court, however, views the information in the affidavit in the light most favorable to a magistrate's probable cause determination. *State* v. *Duntz,* 223 Conn. 207, 216, 613 A.2d 224 (1992). If an affidavit does not provide a substantial factual basis for the probable cause finding, then the evidence or contraband seized pursuant to the warrant will be suppressed. *State* v. *Barton,* supra, 545.

The warrant affidavit for apartment 210 expressly states the informant's bases of knowledge as being his personal observation of the packaging of narcotics in apartment 210 the night before the search warrant was issued, and his observation of narcotics in the apartment on numerous other occasions. The affidavit also indicated that the informant had been "involved" in the drug operation for some time. Thus, there was a substantial basis for the issuing magistrate to have found that the affidavit adequately described the bases of the informant's knowledge.

The affidavit also contained facts that allowed for the inference that the information was reliable. First, the informant made a statement against his penal inter-

est when he indicated that he had been "involved" in the drug operation. An admission of crime is an indication of reliability because people do not lightly render themselves liable to arrest and prosecution. Id., 551. Second, the police corroborated and verified some of the information provided by the informant. Independent police investigation that corroborates information provided by an informant creates an inference that the informant is reliable. *State* v. *Rodriguez,* 223 Conn. 127, 136, 613 A.2d 211 (1992); *State* v. *Johnson,* supra, 565; *State* v. *Toth,* 29 Conn. App. 843, 853, 618 A.2d 536, cert. denied, 225 Conn. 908, 621 A.2d 291 (1993). In this case, the informant stated that the drug traffickers operated out of apartment 210 by selling drugs in the doorway that leads to the apartment, and by resupplying themselves with drugs from the apartment. The affidavit indicated that the police had previously conducted a narcotics surveillance and made arrests for drug sales in the doorway leading to apartment 210. The affidavit also stated that the police had received numerous calls that the defendant was conducting a drug operation in the area of the apartment building where apartment 210 is located. This information was verified by three other confidential sources.

The defendant claims that, despite the admission of crime by the informant and the corroboration by the police as stated in the affidavit, the information is unreliable because the informant is a first time informant. This fact, however, does not necessarily make information less reliable. *State* v. *Toth,* supra, 853. "Were the police unable to rely on information obtained from first time informants, they would be deprived of an important resource in their criminal investigations." Id. The affidavit for the apartment 210 warrant contained information that provided a substantial basis for the inference that the information was reliable.

The warrant affidavit relating to the first floor of 79 Trowel Street expressly states the informant's bases of knowledge by indicating that the same informant, who had provided the information for the apartment 210 affidavit, had been present on numerous occasions when cocaine was packaged at 79 Trowel Street. The informant had also personally observed guns at 79 Trowel Street. Furthermore, the affidavit contained facts that allowed the issuing magistrate to infer that the information was reliable. As previously indicated, the 79 Trowel Street warrant was issued after the execution of the apartment 210 warrant, and its affidavit contained all of the same information from the same informant as the apartment 210 affidavit. Since we concluded that the trial court could have inferred that the information provided in the apartment 210 affidavit was reliable, the inference also applies to 79 Trowel Street.

The affidavit for 79 Trowel Street also contained additional information from which the trial court could have inferred the reliability of the informant. The affidavit indicated that the informant had provided information about apartment 210, which had been verified as accurate by the prior search of that apartment. See *State* v. *Rodriguez,* supra. Furthermore, the police, by independent investigation, corroborated a number of statements made by the informant. See *State* v. *Toth,* supra. The affidavit for 79 Trowel Street indicated that the informant had stated that 202 Sheridan Street was leased by Lori Smith, the defendant's girlfriend, and that the defendant used several cars, including a white Toyota, Connecticut registration 718-GVK. The police confirmed, through other sources, that Smith rented 202 Sheridan Street and that the defendant lived there with her. The police discovered the white Toyota with registration 718-GVK parked in front of 202 Sheridan

Street. The affidavit also indicated that the police had received calls that the defendant was selling drugs out of 79 Trowel Street.

Thus, since there is a substantial factual basis for finding that probable cause existed for issuing the warrants, we uphold the validity of the warrants, and conclude that the evidence obtained from the execution of the search warrants at apartment 210 and the first floor of 79 Trowel Street was properly admitted into evidence.

## II

The defendant next claims that the trial court improperly failed to charge the jury that it must agree as to which underlying crime or crimes the defendant conspired to commit. In this case, the trial court did not instruct the jury that it must indicate which underlying crime or crimes the defendant had conspired to commit in order to return a verdict of guilty of conspiracy. Here, the state charged the defendant with conspiring to commit conduct in violation of three separate crimes.[7] The defendant claims, under our analy-

---

[7] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, *for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."* (Emphasis added.)

General Statutes § 21a-277 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance . . . except as authorized in this chapter, *for a first offense, shall be imprisoned not more than fifteen years* and may be fined . . . and for a second offense shall be imprisoned not more than thirty

sis in *State* v. *Toth*, supra,[8] that because the trial court failed to instruct the jury to indicate which crime or crimes the defendant had conspired to commit, the trial court could not know which offense or offenses the defendant was found guilty of conspiring to commit. Because the penalty for conspiracy is determined by the penalty for the most serious offense that is the object of the conspiracy; General Statutes § 53a-51; the defendant contends that a criminal sentence cannot be imposed without knowing what is the most serious offense of the conspiracy.[9] The defendant did not object at trial to the conspiracy jury instruction on the grounds he now claims.[10] He seeks to prevail, however, under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the

---

years and may be fined . . . *and for each subsequent offense, shall be imprisoned not more than thirty years* and may be fined . . . ." (Emphasis added.)

General Statutes § 21a-277 (c) provides: "No person shall knowingly possess drug paraphernalia in a drug factory situation as defined by subdivision (20) of section 21a-240 for the unlawful mixing, compounding or otherwise preparing any controlled substance for purposes of violation of this chapter."

[8] *State* v. *Toth*, 29 Conn. App. 843, 618 A.2d 536 (1993), was decided after the trial court had rendered judgment in this case.

[9] In this case, the underlying crimes of the conspiracy charge have varying penalties.

[10] The defendant objected to the jury charge on the ground that the charge was "vague and unclear." We need not consider a claim on appeal unless it was distinctly raised at trial or arose subsequent to trial. Practice Book § 4185. "This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning*, 162 Conn. 112, 118, 291 A.2d 750 (1971); *State* v. *Busque*, 31 Conn. App. 120, 127, 623 A.2d 532, cert. granted on other grounds, 226 Conn. 910, 628 A.2d 984 (1993).

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40; *State* v. *Nixon,* 32 Conn. App. 224, 232, 630 A.2d 74 (1993). In this case, the first two prongs of *Golding* are satisfied. See *State* v. *Toth,* supra. We must next determine whether the alleged constitutional violation clearly exists and deprived the defendant of a fair trial.

In *State* v. *Toth,* supra, we concluded that "in the absence of an instruction to the jury that it must determine beyond a reasonable doubt which of several object offenses the defendant conspired to commit," a jury would be misled. Id., 864. When a jury is misled in this manner and returns a general verdict of guilty of conspiracy, it is impossible for the trial court to know what underlying crime or crimes the defendant conspired to commit. Id., 863. *State* v. *Toth,* supra, is based primarily on the fact that if a defendant is convicted of one count of conspiracy, even a conspiracy involving an agreement to conspire to commit more than one crime, there can be only one criminal sentence. Id., 858–59. The sentence is determined pursuant to General Statutes § 53a-51, which provides that the penalty for conspiracy is " 'the same grade and degree as the most serious offense which is . . . [the] object of the conspiracy.' " As a result, we concluded in *State* v. *Toth,* supra, that a trial court cannot properly impose a penalty without knowing the most serious crime of the conspiracy of which the jury found the defendant guilty. Id., 861.

The circumstances in this case are similar to those in *State* v. *Toth,* but the two cases are not identical. In *Toth,* supra, the defendant was found guilty of conspiracy to commit any one or more of three crimes, but he was not found guilty of the commission of the one underlying crime with which he was charged. In this case, however, the defendant was found guilty of con-

spiracy to commit any one or more of three crimes, and guilty of the commission of the one underlying crime with which he was charged. The underlying crime of which the defendant was convicted is the most serious of the three underlying crimes of the conspiracy charge. In *State* v. *Toth,* supra, we concluded in dicta that if the defendant had been convicted of both conspiracy and the most serious underlying substantive offense, then it might have been reasonable for the trial court to have concluded that the jury also found the defendant guilty of conspiracy to commit that underlying offense. Id., 863–64.

A defendant can be guilty of a substantive crime and not guilty of conspiring to commit that substantive crime. Conversely, a defendant can be not guilty of a substantive crime and guilty of conspiring to commit the substantive crime. "Conspiracy has long been recognized as an offense separate and distinct from the commission of the substantive offense." *State* v. *Hooks,* 30 Conn. App. 232, 241, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993), citing *In re Luis R.,* 204 Conn. 630, 637, 528 A.2d 1146 (1987). "The commission of the substantive offense and a conspiracy to commit it are separate and distinct crimes. . . . The crime of conspiracy is dependent on clear principles, and has characteristics and ingredients which separate it from all other crimes." (Citations omitted; internal quotation marks omitted.) *In re Luis R.,* supra; *State* v. *Hooks,* supra.

The jury could have found that the defendant conspired to commit conduct in violation of General Statutes § 21a-277 (a) or § 21a-277 (c) or both, but did not conspire to commit a violation of General Statutes § 21a-278 (b), and then determined that he committed the substantive offense in violation of § 21a-278 (b). Under that story line, it would not be true that the jury found the defendant guilty of *both* a violation of

§ 21a-278 (b) and conspiracy to commit a violation of § 21a-278 (b). The trial court would then find itself in the same dilemma as in *Toth* of not knowing what sentence should be imposed because the penalties for violations of §§ 21a-277 (a) and 21a-277 (c) differ from the penalty for a violation of § 21a-278 (b).

Furthermore, because the jury was not instructed that it must determine whether the defendant was guilty of conspiring to commit one, two, or all three of the underlying crimes, it is reasonably possible that the jury was misled. It could have found the defendant guilty of conspiracy without finding that the defendant conspired to commit at least one of the three underlying crimes because it could have concluded that the defendant conspired to commit a hybrid crime, which combined elements from each underlying crime, but did not contain all of the elements of any one of them.

We stated in *State* v. *Toth,* supra, that "[i]n reviewing a constitutionally based challenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. . . . [A]n error in the charge requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." (Citations omitted; internal quotation marks omitted.) Id., 864. Here, it is reasonably possible that the jury was misled because it could have reached varying conclusions regarding the conspiracy conviction. As a result, we conclude, as we did in *State* v. *Toth,* supra, "that in the absence of an instruction to the jury that it must determine beyond a reasonable doubt which of several object offenses the defendant conspired to commit, the jury was misled by the charge."

Because it is reasonably possible that the charge as a whole, and the conspiracy charge in particular, misled the jury, the defendant was deprived of a fair trial, and must prevail under *Golding*.[11] *State* v. *Toth,* supra, 858. When, as here, there is a reasonable possibility that the jury was misled, it is mandated that the judgment of conviction be reversed and the case be remanded for a new trial. Id., 864.

## III

The defendant next claims that certain jury instructions[12] regarding the jury's duty violated the defendant's constitutional rights because the instructions (1) were unfairly balanced in favor of conviction, and (2) undermined the presumption of innocence and diluted the state's burden of proof. The defendant made no objection at trial to the instructions and seeks to prevail under *State* v. *Golding,* supra. We conclude that the defendant's claims are unavailing.

The defendant contends that the language in the instruction was unfairly balanced in favor of conviction because it gave the jurors the impression that they should be firm and strong-minded and should act as "sworn officers of the court" and as "an arm of the court" when deciding to convict, but not when decid-

---

[11] This case is not subject to a harmless error analysis. See *State* v. *Suplicki,* 33 Conn. App. 126, 634 A.2d 1179 (1993); *State* v. *Toth,* 29 Conn. App. 843, 864, 618 A.2d 536 (1993).

[12] The defendant challenges the following jury instruction: "The state of Connecticut and its people, on the other hand, look to you as the sworn officers of the court to deal with this case fairly, firmly, and honestly as strong-minded men and women with the interests placed in your hands and as an arm of the court to aid and uphold the law of the land by rendering a verdict of guilty if the facts and the law requires such a verdict. It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with crime by respecting the presumption of innocence which the law imputes to every person so charged and by making the state meet its burden of proving guilt beyond a reasonable doubt. But you must keep in mind that this rule of law is made to protect the innocent, not the guilty."

ing to acquit. According to the defendant, the "language implied that the jurors would be shirking their responsibilities if they voted to acquit."

While we conclude that "it would be preferable for a trial court either to omit those references entirely or frame the instructions so that the laudatory references are included with respect to both jury functions—acquittal as well as conviction"; *State* v. *Walton,* 227 Conn. 32, 63, 630 A.2d 990 (1993); we find that the defendant's claim is controlled by the recent decision in *State* v. *Walton,* supra, which considered a challenge to the same jury instruction language as in this case. In *State* v. *Walton,* supra, 65, the Supreme Court stated that a claim of instructional error could not prevail under *Golding* "in an absence of a showing that the instruction was likely to be misunderstood by the jurors as an admonition that they would be shirking their duty by acquitting." Here, the passage challenged by the defendant is part of a section of the jury charge that instructed the jury to view the evidence carefully and objectively, and to render a verdict based on its consideration of the evidence and the law. We conclude that the charge as a whole did not mislead the jury regarding its duty, and, thus, the defendant cannot prevail under *Golding.*

The defendant's next claim, that the trial court undermined the defendant's presumption of innocence and diluted the state's burden of proof, is based on the following passage: "But you must keep in mind that [the presumption of innocence and the burden of proof are] made to protect the innocent, not the guilty."

This claim is disposed of by the recent decisions in *State* v. *Walton,* supra, 67, and *State* v. *Stanley,* 223 Conn. 674, 695–96, 613 A.2d 788 (1992). It is well established that the challenged jury instructions regarding the presumption of innocence and the burden of proof

"are the same or similar to jury instructions that previously have been approved. . . ."; (citations omitted; internal quotation marks omitted) *State* v. *Stanley,* supra, 695; provided that these instructions, when considered in the context of the entire jury charge, do not undermine the presumption of innocence or dilute the burden of proof. Id., 696.[13] The jury charge in this case, when considered in its entirety, adequately informed the jury regarding the presumption of innocence and the burden of proof.

## IV

The defendant also claims that the trial court improperly denied the defendant access to the psychiatric records of a state's witness.[14] While the defendant preserved this claim by objecting to the trial court's ruling, we conclude that the defendant's challenge is unavailing.

[13] Instructional errors regarding the defendant's presumption of innocence and the state's burden of proof are constitutional in nature. *State* v. *Adams,* 225 Conn. 270, 289, 623 A.2d 42 (1993).

[14] The defendant also challenges, under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), that in camera inspections by judges do not adequately protect a defendant's rights under article first, § 8, of the Connecticut constitution. Our Supreme Court has indicated that it will not address whether a defendant's right to impeach a state's witness through the use of psychiatric records arises out of the confrontation clause of the sixth amendment or the due process clause of the fourteenth amendment to the federal constitution, or the confrontation or due process clauses of the Connecticut constitution "until we have a case in which it would make a difference or until the United States Supreme Court offers us further guidance." *State* v. *D'Ambrosio,* 212 Conn. 50, 57 n.5, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); see also *State* v. *Howard,* 221 Conn. 447, 458, 604 A.2d 1294 (1992); *State* v. *McMurray,* 217 Conn. 243, 256 n.13, 585 A.2d 677 (1991). The defendant in this case has not provided us with any basis for determining that the source of the right would affect the outcome, has not cited any United States Supreme Court authority that would offer further guidance, and has not provided us with a separate analysis of his Connecticut constitutional claim. We, therefore, decline to review this claim.

The standard for determining whether a defendant may obtain access to a witness' psychiatric records is well established.[15] If a defendant makes a preliminary showing that his ability to cross-examine a witness would likely be impaired without access to the witness' psychiatric records, and the witness consents to an in camera inspection of the records, then the trial court must determine "whether the records are especially probative of the witness' capacity to relate the *truth* or to observe, recollect and narrate relevant occurrences." (Emphasis added.) *State* v. *D'Ambrosio,* 212 Conn. 50, 58, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); see also *State* v. *McMurray,* 217 Conn. 243, 257, 585 A.2d 677 (1991). "If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. . . . Once the trial court has made its inspection, the court's determination of the defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused." (Citations omitted.) *State* v. *D'Ambrosio,* supra, 58–59; see also *State* v. *McMurray,* supra, 257–58.

In this case, the defendant requested an in camera inspection of the psychiatric records of Michael Vines,[16] a witness for the state who the defendant alleged is mentally retarded and has difficulty distinguishing

---

[15] A trial court must balance a witness' statutory privilege to keep psychiatric records confidential against a defendant's constitutional right to cross-examine a state's witness. *State* v. *McMurray,* 217 Conn. 243, 256, 585 A.2d 677 (1991). General Statutes § 52-146e (a) provides that, with certain exceptions, "[a]ll communications and records as defined in section 52-146d shall be confidential . . . ." General Statutes § 52-146d (2) provides that " '[c]ommunications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist . . . ."

[16] Psychiatric evaluations of the witness were conducted to determine whether he was competent to stand trial in his own criminal case.

between the concepts of "true and false."[17] The defendant claimed that the records contained information especially probative of the witness' capacity to relate and comprehend the truth. The trial court conducted an in camera inspection of the psychiatric records, and concluded that the witness "understands the duty to tell the truth. . . . [T]here is nothing in the records presented that would indicate anything to the contrary or relate in any way to his credibility and there is nothing in the records that would require that they be turned over to the defendant."

Our review of the records revealed no information relating to the witness' "ability to comprehend, know or correctly relate the truth . . . ." *State* v. *D'Ambrosio,* supra, 58. Since there is no information in the psychiatric records that would have aided the defendant in his cross-examination of the witness, we conclude that the trial court did not abuse its discretion in denying the defendant access to the records.

The judgment is reversed as to the conviction of conspiracy only and the case is remanded for a new trial on the second count of the information.

In this opinion the other judges concurred.

---

[17] Outside the presence of the jury, the witness, Vines, was asked by both the defendant and the state whether he knew what it meant to tell the truth. The witness responded, "That means you tell the truth. If you tell a lie you go to jail. . . . The truth means you tell the truth. When you lie you get in trouble." When asked by defense counsel whether he would lie on the witness stand, the witness responded, "No."