STATE OF CONNECTICUT *v.* RODNEY CROSBY
(13384)

O'CONNELL, FOTI and LANDAU, Js.

Argued November 8, 1994—decision released February 14, 1995

*Susan M. Cormier,* with whom, on the brief, was *Michael S. Taylor,* certified legal intern, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals[1] from judgments of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a) and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b) under one information, and assault in the second degree in violation of General

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

Statutes § 53a-60 (a) under a separate information.[2] The defendant was sentenced to a total effective sentence of seventy years.[3]

On appeal, the defendant asserts that the trial court improperly (1) consolidated three informations for trial, (2) instructed the jury as to what evidence to consider in each case and as to the presumption of innocence, (3) excluded impeachment testimony, and (4) admitted identification evidence. The defendant also alleges that the evidence was insufficient to support the guilty verdict of carrying a pistol without a permit. We affirm the judgments of the trial court.

The jury could reasonably have found the following facts. On May 10, 1991, at approximately 3 a.m., the defendant went to the home of the victim, Kyong Flemming, at 1414 Stratford Avenue in Bridgeport. At the time, the victim and her two young daughters were at home. The defendant entered and threatened to "blow the victim's brains out." He fired one shot in the house and then proceeded to follow the victim outside where several more shots were fired. The victim called her ten year old daughter's name, and when the child came outside she found her mother lying on the ground. The victim died of multiple gunshot wounds to the chest, abdomen and upper and lower extremities. The defendant gave a written statement later that evening and confessed to shooting the victim four or five times with his nine millimeter gun. The casings found at the scene

---

[2] The defendant was found not guilty on this second information of attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1). A mistrial was declared on a third information to the charges of sexual assault in the first degree in violation of General Statutes § 53a-70a and unlawful restraint in violation of General Statutes § 53a-95.

[3] The defendant was committed to the custody of the commissioner of correction for the term of life on the count of murder, and for the term of five years on each of the other counts, with all sentences imposed to be served consecutively.

and the bullets that killed the victim came from a nine millimeter gun.

At approximately 5 a.m. that same morning, Laurie Thompson observed the defendant outside her house on Sixth Street near Stratford Avenue in Bridgeport, holding a man at gunpoint and asking about the girls inside. Thompson was in the house with her friend Lisa Campfield. They ran out the back door but encountered the defendant about two blocks away near Pettiway's Variety Store. The defendant shot Thompson in the leg with a handgun. A nine millimeter shell casing was found at the scene. The defendant also confessed to this shooting.

The third incident, which resulted in a declaration of mistrial after the jury failed to return a verdict on the charges of sexual assault and unlawful restraint, allegedly took place that same morning, on Union Avenue, after the murder. The alleged victim, D, had heard the gunshots and later had seen the body being moved from the scene of the crime. Thereafter, while she was walking home, she was allegedly restrained at gunpoint and sexually assaulted by the defendant who told her that he knew he was going to jail and that he had "shot two bitches."

I

The defendant first claims that the trial court improperly granted the state's motion to consolidate the three informations thereby raising the "potential for prejudice . . . greater than that which existed in *Boscarino* and *Horne*."[4]

---

[4] In *Boscarino* and *Horne*, our Supreme Court held that the trial court improperly consolidated the cases against each defendant because the factual similarities between the cases, although insufficient to make the evidence in each case admissible at the trial of the other cases, impaired the defendant's right to the jury's fair and independent consideration of the evidence in each case. *State* v. *Horne*, 215 Conn. 538, 546–51, 577 A.2d 694 (1990); *State* v. *Boscarino*, 204 Conn. 714, 719–25, 529 A.2d 1260 (1987).

General Statutes § 54-57[5] and Practice Book § 829[6] permit a defendant to be tried jointly on charges arising from separate cases. "When a defendant stands accused of two or more similar offenses, they may be joined at trial if they are based on related acts that evince a common scheme, intent or motive. *State* v. *Greene*, 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). The question of joinder or severance rests in the sound discretion of the trial court. *State* v. *Boscarino*, 204 Conn. 714, 720, 529 A.2d 1260 (1987); *State* v. *Carpenter*, 19 Conn. App. 48, 62, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). The defendant bears the heavy burden of showing that a denial of severance resulted in substantial injustice beyond the curative power of jury instructions. *State* v. *Herring*, 210 Conn. 78, 95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Whether a joint trial will be substantially prejudicial to the rights of the defendant means something more than that it will be less advantageous to the defendant. *State* v. *Bell*, 188 Conn. 406, 411, 450 A.2d 356 (1982)." *State* v. *Rose*, 29 Conn. App. 421, 429–30, 615 A.2d 1058, cert. denied, 224 Conn. 923, 618 A.2d 529 (1992).

We recognize that the defendant's claim of possible prejudice from a joint trial results from the fact that when alleged crimes are so similar in time, place and circumstance, there is a danger that the jury may use evidence of one crime to convict the defendant of the other crimes. See *State* v. *Oliver*, 161 Conn. 348, 288 A.2d 81 (1971).

---

[5] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[6] Practice Book § 829 provides: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

"Our Supreme Court has held that a trial court should consider several factors in determining whether [a motion for joinder is proper]. These factors include: (1) whether the charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred. . . . *State* v. *Jennings*, 216 Conn. 647, 658, 583 A.2d 915 (1990)." (Citations omitted; internal quotation marks omitted.) *State* v. *Rose*, supra, 29 Conn. App. 430. Our review of the record leads us to conclude that joinder did not result in substantial injustice in this case.

The defendant was charged with crimes based on three discrete, easily distinguishable factual scenarios that were similar in time and locality. Although there were similarities, the charges were easily separable as the victims were different and the chronology clear. The evidence, presented over a four day period through nineteen witnesses, was neither so complex nor so confusing as to be in any manner incomprehensible to the jury. It was organized chronologically and presented logically. The evidence was not commingled. The defendant at no time raised an objection to the manner in which the evidence was presented.

Further, where evidence of one incident can be admitted at the trial of the other incidents, separate trials would provide the defendant no significant benefit, and under such circumstances he would ordinarily not be substantially prejudiced by joinder. *State* v. *Pollitt*, 205 Conn. 61, 68, 530 A.2d 155 (1987); *State* v. *Grant*, 33 Conn. App. 133, 138, 634 A.2d 1181 (1993). Evidence of a criminal defendant's unconnected crime may be admissible when probative to show identity. *State* v.

*Smith,* 10 Conn. App. 624, 629, 525 A.2d 116, cert. denied, 204 Conn. 809, 528 A.2d 1156 (1987). To be relevant on the issue of identity, a reasonable inference that the person who committed one crime also committed the other must be warranted. *State* v. *King,* 35 Conn. App. 781, 791, 647 A.2d 25 (1994). Here, evidence elicited as to an incident charged by one information was germane to the issues of identity and opportunity in either or both of the cases based on the other incidents.

The trial court did not abuse its discretion in granting the state's motion to consolidate. The joinder of the three incidents for a single trial did not result in substantial injustice to the defendant.

## II

The defendant next claims that the trial court improperly instructed the jury as to what evidence to consider in each case, and also as to the presumption of innocence.

## A

The defendant argues that the trial court failed to provide any guidance to the jury regarding what evidence to consider in each case and to caution the jury not to consider the commission of one crime as evidence of the commission of another. The defendant acknowledges that he neither filed a request to charge nor took an exception to the court's final instruction that he claims lacked the admonition. He claims review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), in that the failure ''violated the defendant's constitutional due process rights by diluting the state's obligations to prove each element of each crime beyond a reasonable doubt.''

Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error ''only if all

of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id., 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992).

The first two conditions of *Golding* are met here because there is an adequate record for review and the right not to be convicted except on proof beyond a reasonable doubt is a constitutional right. See *Summerville* v. *Warden*, 29 Conn. App. 162, 178 n.4, 614 A.2d 842 (1992), rev'd on other grounds, 229 Conn. 397, 641 A.2d 1356 (1994). On the basis of a review of the merits, however, we conclude that no constitutional violation exists that clearly deprived the defendant of a fair trial. See *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

Our standard of review in cases where the defendant claims that the instructions violate constitutional due process protections is whether the jury instructions were so deficient that it was reasonably possible that the jury was misled. *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993). We will reverse a conviction only if, in the context of the whole charge, there is a "reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Shannon*, 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989). We examine the

charge as a whole to determine if it adequately guided the jury to a proper resolution of the issues presented. *State* v. *Fleming*, 198 Conn. 255, 268, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

Our review of the record leads to the conclusion that the trial court sufficiently distinguished the three separate incidents and each of the individual offenses. While it does not appear that the court gave a specific cautionary instruction, a reading of the entire charge makes it clear that proper guidance was given so that it is not likely the jury impermissibly intermingled evidence of one incident with that of either of the other two.[7]

The defendant raises for the first time in his brief a claim that the trial court failed to "relate adequately the abstract rules of law to the facts of the case . . . [n]o reference was made to any specific evidence other than the defendant's claim of intoxication as it applied to the element of intent." He contends that he was deprived of his constitutional due process right to an adequately instructed jury.

---

[7] The trial court instructed that there were three separate and distinct informations, and went through each separately during the charge. It was clear that the jury was instructed that not only was each count separate and distinct, but also that each information was separate and distinct.

The court concluded: "When you commence your deliberations, I am also going to include along with the informations—and I would ask that you either each read the informations or have your foreperson read them aloud so that you thoroughly understand the informations, and I am also going to send in for your aid and comfort, perhaps, what I have termed an elements sheet. And it will set forth merely the bare bones elements of everything that I have explained to you as part of my instructions. Please do not take them out of context. You must take them in consideration with all of my other instructions; but I know that certainly with several counts on three separate informations involved here, it will be of some use to you just merely to see what these bare bones elements are. So you will also have that with you. I will also send in to you a sheet describing your possible verdicts in each count on each of the informations. Hopefully, that will be of some use to you, also."

Whether the trial court's charge adequately relates the issues of law to the facts of a case depends on the particular circumstances of that case. We have recently decided several cases involving this issue. In *State* v. *Lemoine*, 33 Conn. App. 743, 641 A.2d 131, cert. granted, 230 Conn. 909, 644 A.2d 920 (1994), and *State* v. *Wolff*, 29 Conn. App. 524, 616 A.2d 1143 (1992), we determined on the bases of the particular circumstances of each case, that the courts' instructions failed to relate the issues of law adequately to the facts of the cases. In *State* v. *Shanks*, 34 Conn. App. 103, 640 A.2d 155, cert. denied, 229 Conn. 921, 642 A.2d 1216 (1994), we determined otherwise.

Our review of the whole instruction demonstrates that the elements of each crime are set forth clearly and separately. Also, the instruction sufficiently related the law to the facts of each crime charged. Because we cannot determine that the alleged constitutional violation clearly exists, we conclude that the defendant has failed to meet the third prong of *Golding*.

## B

The defendant next claims that the trial court improperly instructed the jury as to the presumption of innocence. Specifically, the defendant claims the trial court's instruction that "you must keep in mind that this rule is made to protect the innocent and not the guilty" violated the constitutional guarantees of due process and the defendant's right to a fair trial.[8] The

[8] The court's instruction stated in part: "Every person . . . charged with the commission of a crime is presumed to be innocent until proven guilty. . . . [H]e continues to be innocent until such time as the evidence . . . [satisfies] you beyond a reasonable doubt that he is guilty. . . . The presumption of innocence does not have the effect of evidence itself. Its only effect is to place upon the state the burden of proving the defendant's guilt beyond a reasonable doubt. . . . It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with crime by respecting the presumption of innocence which the law imputes to every person

defendant acknowledges that this claim was not properly preserved but seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant cannot prevail under *Golding* as it is clear from a reading of the court's charge in its entirety that the instructions did not dilute the presumption of the defendant's innocence or lessen the state's burden of proof. "Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." (Internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 651–52, 629 A.2d 1067 (1993); see *State* v. *Stanley*, 223 Conn. 674, 695–96, 613 A.2d 788 (1992); *State* v. *Bush*, 33 Conn. App. 253, 266–67, 635 A.2d 820 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994).

We have recently approved a similar instruction as to the presumption of innocence. See *State* v. *Jaynes*, 35 Conn. App. 541, 556–59, 645 A.2d 1060, cert. denied, 231 Conn. 928, 648 A.2d 880 (1994) (similar instruction did not violate defendant's right to due process and to fair trial); see also *State* v. *Zaporta*, 36 Conn. App. 250, 268–69, 648 A.2d 880 (1994).

We review the charge as a whole and conclude that the trial court adequately conveyed to the jury the presumption of the defendant's innocence and the state's burden of proof.

## III

The defendant next posits that the trial court improperly excluded impeachment testimony from a defense witness. The facts relevant to this claim are as follows.

so charged and by making the state meet its burden of [proof] beyond a reasonable doubt. But you must keep in mind that this rule of law is made to protect the innocent and not the guilty. If and when the presumption of innocence has been overcome by evidence, proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it is the sworn duty of the jury to enforce the law and render a guilty verdict."

The defendant presented a witness, Theodora Diaz, who testified that both Laurie Thompson, the victim of the assault charge, and D, the woman who was the alleged victim of the sexual assault, lived in her general neighborhood.[9] She further testified that she had spoken to people in the community about both women on more than one occasion. She was then asked if she knew of the women's reputations for truth and veracity. The court sustained the prosecutor's objection.

The defendant alleges that he was deprived of his state and federal constitutional rights to a fair trial by not being allowed his right to confrontation.

A criminal defendant's right to impeach the witnesses against him implicates his constitutional right to confrontation. *State* v. *Rodriguez*, 180 Conn. 382, 393, 429 A.2d 919 (1980). Cross-examination to elicit facts tending to show lack of veracity is a matter of right and may not be unduly restricted. *State* v. *Oehman*, 212 Conn. 325, 330, 562 A.2d 493 (1989). That right is not absolute and is subject to reasonable limitation. *State* v. *Vitale*, 197 Conn. 396, 401, 497 A.2d 956 (1985). Not every evidentiary ruling that denies a defendant a line of inquiry is constitutional error. Id., 403. The court may exercise discretion in this regard; *State* v. *Martin*, 201 Conn. 74, 87, 513 A.2d 116 (1986); and may disallow reputation evidence when the proponent fails to provide a sufficient foundation. *State* v. *Bryant*, 17 Conn. App. 525, 530, 554 A.2d 1105 (1989). The record discloses that no proper foundation was provided to show either that the witness had personal knowledge of the women's general reputations in the community for veracity, or that those to whom she spoke about the women had an opportunity to form, and did form, opinions as to the women's veracity.[10]

---

[9] The jury failed to reach a verdict in D's case.

[10] The following was elicited from the witness:

"[Defense Counsel]: Okay. Do you know a girl named Laurie Thompson?

We cannot conclude that the trial court abused its discretion in excluding this testimony for lack of a proper foundation.

"A. Yes, I know her. I know of her.

"Q. Do you know whether or not she has any reputation in the community for truth and veracity?

"A. Yes, she does, with a bad reputation.

"Q. A bad reputation?

"A. Bad—

"[State's Attorney]: Objection, there's no foundation for that.

"The Court: Sustained.

"[Defense Counsel]: Do you know [D]?

"A. Yes.

"Q. How long do you know [D]?

"A. Not that well. I seen her a few times.

"Q. Do you know people who know her?

"A. Yes.

"Q. Do you know if she has a reputation in the community for truth?

"[State's Attorney]: Objection. Insufficient foundation.

"The Court: Sustained.

"[Defense Counsel]: Do they live—do you know whether or not they live in the same general neighborhood that you live in?

"A. Yes, they do. About two blocks away from me.

"Q. And do you know how long approximately both girls lived in that neighborhood?

"A. No, I wouldn't know how long they lived there, but they lived there same amount of time as I have.

"[Defense Counsel]: Your Honor, same offer.

"[State's Attorney]: Still no foundation.

"The Court: Still no foundation for her reputation in the community.

"[Defense Counsel]: For truth and veracity.

"[Defense Counsel]: Have you had any occasion to talk with members of the community as to the circumstances in which people you know had anything to do with Laurie or [D]?

"A. Yes.

"Q. On more than one occasion?

"A. More than once.

"Q. As to which girl or both?

"A. Both.

"Q. As to your personal knowledge of each of these girls, how well do you know them personally? I may have asked you before, I don't remember at this point.

"A. My personal knowledge of them is—I know them personally as seeing them. I don't know them as associating myself with them too much. But I see them a lot at night and I don't know if I could say what I see them doing, but—"

## IV

The defendant also alleges that the trial court improperly allowed out-of-court identification evidence of the defendant by Thompson, the victim of the assault, that was unnecessarily suggestive and tainted her subsequent identifications. This claim was not raised at trial. The defendant claims reviewability under *Golding*.[11]

Following her injury, Thompson was taken to a hospital. She was administered medication and when she awoke she identified the defendant, who was standing in the doorway, as the person who had shot her. Sometime thereafter, Thompson gave the police a statement and also identified the defendant in a photographic lineup and photographic array. She also made an in-court identification.

We conclude that the defendant has not met the first prong of the *Golding* analysis for review of his claim. The first criterion, which requires that the record be adequate to review the claim, was designed to avoid remands for the purposes of supplementing the record. *State* v. *Leroy*, 33 Conn. App. 232, 235, 635 A.2d 305 (1993), cert. denied, 228 Conn. 922, 638 A.2d 36 (1994).

"In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the 'totality of the circumstances.' See *State* v. *Gold*, 180 Conn. 619, 656–58, 430 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Piskorski*, 177 Conn.

---

[11] The defendant does not claim review under the plain error doctrine.

677, 741, 419 A.2d 866 (1979); *State* v. *Willin*, 177 Conn. 248, 251, 413 A.2d 829 (1979); *State* v. *Smith*, 165 Conn. 680, 684, 345 A.2d 41 (1974); see also *Manson* v. *Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)." *State* v. *Theriault*, 182 Conn. 366, 371–72, 438 A.2d 432 (1980).

Without question, almost any one-to-one confrontation between a victim and a suspect must convey the message that the police have reason to believe him guilty, and is therefore unnecessarily suggestive. *State* v. *Gordon*, 185 Conn. 402, 414–15, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982). We cannot end here, however. The second prong is a determination of reliability. This determination requires the fact-finding function of the trial court. "[I]n determining whether, despite an unnecessarily suggestive procedure, an identification is reliable, the trial court's observation of witnesses carries less weight than in other fact finding contexts." Id., 416. The court must, however, find facts sufficient for a reviewing court to examine the legal question of reliability. Id.

It is the defendant's burden to prove that, under the totality of the circumstances, this identification was so unreliable as to be inadmissible into evidence. *State* v. *Rose*, supra, 29 Conn. App. 426. The "totality of circumstances," by necessity, requires the determination of a number of factors used to test the reliability of the out-of-court identification. *State* v. *Gordon*, supra, 185 Conn. 416. The appellant bears the burden of providing us with a record adequate to review his claim. *State* v. *Laracuente*, 205 Conn. 515, 520, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). Without the necessary factual and legal conclusions furnished by the trial court, we would be

left to speculate. *State* v. *Hoeplinger*, 27 Conn. App. 643, 647, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992).

In this case, no motion to suppress was filed and no evidentiary hearing was held regarding the identification evidence at issue. Therefore, no findings are available for our review of the legal question of reliability. We will not review the unpreserved claim.

## V

Finally, the defendant argues that the evidence was insufficient to enable the jury to convict him of carrying a pistol without a permit. Specifically, he argues that to convict him under General Statutes § 29-35, the state must prove that the weapon involved was a pistol as defined pursuant to § 29-27, that is, having a barrel less than twelve inches in length.[12]

"The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. . . . The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Citations omitted.) *State* v. *Wagner*, 32 Conn. App. 417, 429–30, 629 A.2d 1146, cert. denied, 228 Conn. 912, 635 A.2d 1231 (1993).

Our Supreme Court recently overruled *State* v. *Brown*, 173 Conn. 254, 377 A.2d 268 (1977), to the

---

[12] General Statutes § 29-27 provides that "[t]he term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

extent that it required the state to introduce direct numerical evidence of the length of the barrel of a handgun to support a conviction under General Statutes §§ 53a-217 and 53a-3 (18). *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994).

Our review of the record shows that the testimony of Lisa Campbell indicated that the gun was not as long as a piece of paper she was shown. That paper, marked in evidence, is less than twelve inches. The evidence was sufficient for the jury to infer that even if the pistol was twelve inches, the barrel as part of the whole, had to be less than twelve inches in length.

Therefore, we conclude that the evidence was sufficient to sustain the defendant's conviction.

The judgment is affirmed.

In this opinion the other judges concurred.