STATE OF CONNECTICUT *v.* ADRIAN KING
(12363)

O'CONNELL, SCHALLER and SPEAR, Js.

Argued June 6—decision released September 6, 1994

*Marilyn B. Fagelson,* special public defender, for the appellant (defendant).

*Jacqueline J. Footman,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), one count of robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, and one count of criminal possession of a firearm in violation of General Statutes § 53a-217.[1] The defendant claims that the trial court

[1] General Statutes § 53a-134 provides in relevant part: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not

(1) improperly denied his motion to suppress evidence, (2) improperly denied his motion to sever the cases, and (3) failed to instruct the jury, sua sponte, to give special scrutiny to an accomplice's testimony. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was charged with a series of crimes in New Haven that took place over a six day period. The first crime occurred on January 16, 1992, in a parking lot behind 310 Whitney Avenue. As

a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm, as defined in subdivision (19) of section 53a-3, to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-217 provides: "CRIMINAL POSSESSION OF A FIREARM OR ELECTRONIC DEFENSE WEAPON: CLASS D FELONY. (a) A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony, a class A felony, except a conviction under section 53a-196a, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196b, a class C felony, except a conviction under section 53a-87, 53a-152 or 53a-153, or a class D felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction.

"(b) Criminal possession of a firearm or electronic defense weapon is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court."

Mathilde Gontarski was removing snow from the roof of her white Pontiac Sunbird, the defendant came up behind her and demanded that she give him the car keys. Gontarksi initially refused, attempted to spray mace in the defendant's face and scuffled with him. Gontarski was thrown to the ground, and the defendant grabbed her purse and stole her car.

Two days later, January 18, at approximately 1 p.m., the defendant entered Herzyk's Package Store in New Haven and requested a bottle of beer from the store clerk, Maria Lebiedz. Lebiedz brought the beer to the counter and the defendant pointed a gun at her face. Lebiedz began taking money out of the register and giving it to the defendant, while pleading for her life. After receiving the money, the defendant walked backwards out of the store and was seen by Lebiedz entering a white Pontiac Sunbird.

Eight hours later, the defendant entered the Long Wharf Mobil Station in New Haven and after purchasing a pack of gum, produced a gun and instructed the clerk, Michael Cohen, to keep his head down, not to speak and to hand over the money in the register. Cohen did as he was told and saw the defendant drive off in a white Pontiac Sunbird.

On January 20, 1992, the defendant and his girlfriend, Staci Byrd, were riding in Byrd's roommate's car when they stopped at the Chapel Street Ice Cream Cafe. The defendant handed Byrd a gun and ordered her to rob the store. Byrd entered the store, asked an employee to get the manager and, with the gun in her hand, ordered the manager, Garnett Wells, to hand over the money in the register. Wells did so. The defendant waited outside and, when Byrd returned to the car, they drove away in what Wells identified as a white, two door car with "HER" as the last letters on the license plate.

The following day the defendant entered the Foxon Sunoco Station in New Haven at approximately 7:40 a.m. to purchase several items, including a bottle of orange juice. When the defendant paid the attendant, Gary Smith, the defendant stated that he wanted "all of it." Smith handed the defendant the entire cash drawer. Fingerprints lifted from the orange juice bottle were identified as the defendant's.

At the time of the defendant's arrest, the police recovered a handgun from the inside pocket of a jacket owned by the defendant. The defendant stipulated that he had previously been convicted of a class B felony. Additional facts are included as necessary in our analysis of the individual claims.

## I

Prior to trial, the defendant moved to suppress identifications made by Gontarski, Lebiedz and Cohen on the grounds that they violated his federal and state constitutional rights. Specifically, the defendant claims that the identification procedures were impermissibly suggestive and that the identifications were unreliable.[2] See *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Payne,* 219 Conn. 93, 108, 591 A.2d 1246 (1991); *State* v. *Pollitt,* 205 Conn. 132, 164–65, 531 A.2d 125 (1987).

The defendant challenged the identification procedure that took place on January 24, 1992, when Detective Brian Norwood of the New Haven police department drove Gontarski, Lebiedz and Cohen to the New

---

[2] The defendant's motion was made pursuant to the fourth, fifth and fourteenth amendments to the United States constitution and article first, §§ 7 and 8, of the Connecticut constitution. "The defendant failed to brief the state constitutional issue separately. This court may, but need not, independently undertake to engage in such an analysis where the issue has not been briefed. Here, we choose not to consider this issue." *State* v. *Sweeney,* 30 Conn. App. 550, 553 n.5, 621 A.2d 304, cert. denied, 225 Conn. 927, 625 A.2d 826 (1993).

Haven Superior Court. Norwood told the victims that they were being brought to an arraignment proceeding in order to determine whether each could recognize the person who had robbed him or her. There was some discussion between the victims before and after entering the courtroom. Norwood brought the three victims into the back of the courtroom where they sat together and watched the arraignment proceedings for approximately fifteen minutes. After each victim notified Norwood that he or she had made an identification, Norwood escorted them out of the courtroom.

A defendant's due process rights are violated when an identification procedure gives "rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). When a defendant moves to suppress identification evidence, he bears the initial burden of proving that the identification resulted from an unconstitutional procedure. *State* v. *Payne*, supra, 219 Conn. 106. "In order to establish that a pretrial identification procedure has violated a defendant's constitutional right to due process, the defendant must prove (1) that the identification procedure was unnecessarily suggestive and (2) that the resulting identification was not reliable under the totality of the circumstances." *State* v. *Hunt*, 10 Conn. App. 404, 407, 523 A.2d 514 (1987). "Whether such an identification procedure is unnecessarily suggestive, depends on the facts and circumstances of each case." *State* v. *Arroyo*, 13 Conn. App. 687, 690, 539 A.2d 581, cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988).

Although our Supreme Court has stated that arraignment identifications may be "suggestive"; *State* v. *Ledbetter*, 185 Conn. 607, 613, 441 A.2d 595 (1981); it does not necessarily follow that such a procedure is "impermissibly suggestive." See *State* v. *Hinton*, 196 Conn. 289, 295, 493 A.2d 836 (1985). The arraignment iden-

tification procedure here was nearly identical to the procedure utilized in *State* v. *Payne,* supra, 219 Conn. 105, when two witnesses were brought to an arraignment for possible identification of a suspect.

Here, as in *Payne,* the victims entered the arraignment courtroom in order to make a possible identification. At no time did Norwood describe the defendant or suggest who or where he was. Although there was some variation in the victims' testimony regarding the number of arraignees involved and the manner in which the arraignees were brought into the courtroom, all agreed that a significant number of them were black, as is the defendant. Moreover, at no time could the victims hear the names of those being arraigned or the crimes with which each arraignee was being charged. None of the victims was aware of the identifications made by either of the other victims until after they had left the courtroom. The victims then discussed the person whom they had identified, in each case, the defendant.

The defendant also argues that the identification procedure was impermissibly suggestive because the victims conversed before identifying the defendant in the arraignment courtroom. We are not persuaded. Norwood testified that the victims were left alone together and they may have discussed the perpetrator's description. The testimony of the three victims regarding the nature of the preidentification conversations varied considerably, however. Gontarski testified that there was no such discussion. Lebiedz stated at the suppression hearing that the three had discussed the crimes committed against each of them in addition to other details concerning the perpetrator's race, height and build. At trial, however, Lebiedz stated that any discussion concerning the specific features of the perpetrator took place after each of the victims had identified the defendant in the arraignment courtroom.

Cohen recalled that some discussion took place before the arraignment but could not remember any of the details. Although we recognize that Norwood's failure to sequester the victims permitted them to converse about the defendant, the record is, at best, confusing as to the nature and extent of those conversations. There is no evidence suggesting that the conversations helped any of the victims distinguish the defendant from the other arraignees. Therefore, we cannot conclude that the conversations unlawfully tainted any of the victims' identifications. See *State* v. *Boscarino*, 204 Conn. 714, 731–32, 529 A.2d 1260 (1987) (prelineup conversations did not render subsequent identification procedure impermissibly suggestive).

We cannot say that the identifications here were impermissibly suggestive and therefore constitutionally infirm. Even if we were to assume that the procedures were unnecessarily suggestive, however, that would not be dispositive of the claim. We would then proceed to determine whether the identifications were reliable under the totality of the circumstances. "In determining whether an identification is reliable in the totality of circumstances, the corruptive influence of the suggestive procedure is weighed against the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (Internal quotation marks omitted.) *State* v. *Pollitt*, supra, 205 Conn. 164.

"The reliability inquiry . . . is fact-bound and made on an ad hoc basis. Generally, where the admissibility of evidence depends upon a preliminary question of fact to be determined by the court, its decision is not to be reversed unless there is clear and manifest error." (Internal quotation marks omitted). *State* v. *Mitchell*,

204 Conn. 187, 203, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). "Absent a very substantial likelihood of irreparable misidentification, [w]e are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." (Internal quotation marks omitted.) *State* v. *Wooten,* 227 Conn. 677, 688, 631 A.2d 271 (1993).

Applying the applicable factors under the reliability inquiry to the facts of this case, we are satisfied that the trial court correctly concluded that each identification was reliable under the totality of circumstances. Gontarski, Lebiedz and Cohen were victims and not merely witnesses to the crimes involved, a factor buttressing the reliability of their identifications. *In re Juvenile Appeal (83–EF),* 190 Conn. 428, 437, 461 A.2d 957 (1983). With respect to Gontarski's identification, a little more than one week had elapsed between the crime and the arraignment. Lebiedz' and Cohen's identification took place within one week of the crimes. Both Gontarski and Lebiedz saw the defendant in daylight face-to-face confrontations lasting over one minute. Although Cohen testified that he had seen the defendant for only one second, he nonetheless was certain that the defendant was the man who had robbed him. Under these circumstances, we conclude that the identifications made by Gontarski, Lebiedz and Cohen were reliable. Accordingly, the trial court properly denied the defendant's motion to suppress.

II

The defendant next claims that the trial court improperly denied his motion to sever because the evidence of each crime was similar but unconnected and likely

to have prejudiced the jury. He argues that this prejudice was not cured by the court's jury instruction. The defendant contends that the joinder of the cases "enhanced the likelihood that the jury would weigh the evidence against the defendant cumulatively rather than independently in each case." *State* v. *Boscarino,* supra, 204 Conn. 723.

General Statutes § 54-57[3] and Practice Book § 829[4] both expressly authorize a trial court to order the joint trial of charges arising from separate cases. Joinder of cases is the norm. See *State* v. *Greene,* 209 Conn. 458, 463, 551 A.2d 1231 (1988), citing Project, "District of Columbia Court of Appeals Project on Criminal Procedure, Joinder and Severance," 26 Howard L.J. 1104, 1105 (1983). The trial court enjoys broad discretion in deciding whether cases should be tried jointly or severed, and that discretion will be overturned only if it has been manifestly abused. *State* v. *Herring,* 210 Conn. 78, 94, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "The defendant bears the heavy burden of showing that the denial of severance resulted in substantial injustice and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) Id., 94–95.

Although evidence of misconduct is inadmissible merely to show a defendant's bad character or tendency to commit criminal acts; *State* v. *Howard,* 187 Conn. 681, 684, 447 A.2d 1167 (1982); such evidence may be offered as proof of an issue in the case, such as intent,

---

[3] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[4] Practice Book § 829 provides: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

identity, malice, motive or a system of criminal conduct. *State* v. *Pollitt,* supra, 205 Conn. 69. The trial court must still consider whether the evidence is relevant and material to one of the circumstances encompassed by the exceptions and, thereafter, weigh whether the probative value of the evidence outweighs its prejudicial impact. *State* v. *Mandrell,* 199 Conn. 146, 151, 506 A.2d 100 (1986).

We agree with the trial court's conclusion that joinder was proper because evidence relating to each case could have been used in the others to show the identity of the defendant or to show a common scheme. To be relevant on the issue of identity or common scheme, the other crime charged must be "sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other." *State* v. *Ibraimov,* 187 Conn. 348, 354, 446 A.2d 382 (1982). The similarities connecting the crimes need not be so unique as to constitute "signature crimes." See *State* v. *Pollitt,* supra, 205 Conn. 69–70. Rather, the features may be of substantial but lesser distinctiveness which, if considered separately, would be insufficient to raise an inference, but when taken together yield a distinctive combination. *State* v. *Jones,* 205 Conn. 638, 661, 534 A.2d 1199 (1987).

Here, all of the crimes took place in New Haven over the course of six days and, with the exception of the first, were generally similar in nature. In addition, the automobile stolen by the defendant in the first robbery was used by him in the next two robberies. The police discovered the stolen vehicle near the apartment of the defendant's girlfriend, Byrd, who had been ordered by the defendant to conduct the fourth robbery while he waited in an automobile outside. The following day, the defendant robbed the Foxon Sunoco Station. Before the defendant's arrest, the police stopped a vehicle owned by the roommate of the defendant's girlfriend that

fit the description of the vehicle used in at least one of the two final robberies. When granted permission by the owner to search the automobile, the police found articles of clothing linking the defendant to the vehicle and its use. Finally, much of Byrd's testimony was also relevant to establish the identity of the defendant and the interconnection of all the robberies. We agree with the trial court that the foregoing evidence could have been used, in the event of separate trials, to show the identity of the defendant or to illustrate a common scheme.

Even if we were to assume that evidence of the other robberies would have been inadmissible at individual trials, we would still conclude that joinder of the cases was proper. In *State* v. *Boscarino*, supra, 204 Conn. 722–23, our Supreme Court recognized three factors that must be considered in determining whether a joinder of cases is improper. These factors are "(1) whether the charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings*, 216 Conn. 647, 658, 583 A.2d 915 (1990).

Although the defendant was charged with five counts of first degree robbery, the charges were based on specific, easily distinguishable facts. Each robbery involved different victims as witnesses. The first count involved an assault on a woman and, thereafter, the theft of her automobile. The fifth count involved Byrd, the defendant's girlfriend, in the robbery of an ice cream parlor. While the remaining three counts involved the robbery by the defendant of three small retail establishments,

each involved different victims, locations and times. Although the defendant conducted himself similarly during the three robberies, our review of the record reveals greater differences than similarities. This conclusion is buttressed by the orderly manner in which the state presented the evidence related to each crime, which had the effect of clearly distinguishing the evidence applicable to each count.

In addition, the crimes committed, while serious, were not of a brutal or shocking nature. With the exception of the first victim's being knocked to the ground, there was no physical harm inflicted on any of the victims. Only eighteen witnesses testified during the five day trial, which was neither complex nor unusual in any regard. See *State* v. *Herring,* supra, 210 Conn. 97 (eight days of testimony by twenty-three witnesses not undue in duration or complexity). Finally, the trial court's instructions included repeated warnings to the jury that the defendant was on trial for six separate counts and that each offense should be considered separately.

Having applied the *Boscarino* factors to the present case, we are satisfied that the trial court correctly concluded that joinder did not result in substantial injustice. Accordingly, we conclude that the defendant has not established that the trial court manifestly abused its discretion by refusing to sever the counts.

### III

In his final claim, the defendant argues that the trial court improperly failed to instruct the jury, sua sponte, to give special scrutiny to the testimony of the defendant's accomplice. Our case law is clear that "where warranted by the evidence, it is the court's *duty* to caution the jury as to the testimony of an accomplice in its charge." (Emphasis in original.) *State* v. *Ferrara,* 176 Conn. 508, 511, 408 A.2d 265 (1979).

Because he did not file a written request for this instruction or take an exception to the instruction on credibility as given, we can review the defendant's claim only if it constitutes plain error. Practice Book § 4185.[5] Review under the plain error doctrine is granted only in extraordinary situations where the error is so obvious that it affects the fairness and integrity of public confidence in the judicial proceeding. *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

"Whether in the interest of justice we notice this failure to give the accomplice instruction as plain error depends in part on whether the failure was harmful. The failure to give the accomplice instruction would be harmful only if the absence of this instruction was likely to have affected the jury's verdict." *State* v. *Brown,* 187 Conn. 602, 613, 447 A.2d 734 (1982). Because the failure to give the accomplice instruction does not violate a constitutional right, it is the defendant's burden to show its harmfulness. Id.

In the present case, the trial court's instruction was more than adequate to inform the jurors that they should scrutinize the accomplice's motives. Accordingly, the defendant has not met his burden of demonstrating that the omission of the accomplice instruction affected the fairness and integrity of the trial. We decline to notice the trial court's failure to give an accomplice instruction as plain error in this case.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the court. . . ."