STATE OF CONNECTICUT *v.* JOHN RIDDLE
(13101)

FOTI, LANDAU and SPEAR, JS.

Argued November 29, 1994—decision released February 14, 1995

*Richard V. Ackerson,* supervisory assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Lisa Riggione,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of inciting injury to persons or property in violation of General Statutes § 53a-179a.[1] He received a sentence of four years incarceration, execution of that sentence suspended after two years, with five years probation to follow.[2] The defendant claims that the trial court improperly (1) refused to allow into evidence a portion of an audiotape, and (2) instructed the jury by failing to relate the issues of law to the facts of the case. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-179a (a) provides: "A person is guilty of inciting injury to persons or property when, in public or private, orally, in writing, in printing or in any other manner, he advocates, encourages, justifies, praises, incites or solicits the unlawful burning, injury to or destruction of any public or private property or advocates, encourages, justifies, praises, incites or solicits any assault upon any organization of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, or the police force of this or any other state or upon any officer or member thereof or the organized police or fire departments of any municipality or any officer or member thereof, or the killing or injuring of any class or body of persons, or of any individual."

[2] The jury found the defendant not guilty of the second count of inciting injury to persons or property.

The jury could reasonably have found the following facts. The defendant is a former Waterbury police officer. In 1989, while still on the police force, he was suspended from service as a result of an investigation conducted by Chief Inspector Robert Deeley. In March, 1991, the defendant's employment with the police department was terminated by order of William Lamb, superintendent of police. The defendant blamed both men for his troubled life thereafter.

In May, 1992, on an unrelated matter, the defendant was sentenced to the Cheshire correctional center where he shared a cell with Richard Filipelli. At some point, the defendant discussed the reason for his being incarcerated and also his anger toward Deeley and Lamb. He discussed his former employment with the Waterbury police department and told Filipelli that Deeley and Lamb were responsible for the termination of his employment and for ruining his life. He said he wanted to kill them. In June, 1992, the defendant asked Filipelli if he "knew anyone who could do someone," meaning to kill someone. Filipelli responded that he knew people who could satisfy his request, and that he knew "people that more or less hurt people for a living." The defendant then told Filipelli that he wanted Deeley and Lamb killed.

Filipelli first told his wife about the conversations that he had had with the defendant, and later reported them to the authorities. With Filipelli's permission, a wireless transmitter was concealed on his person to record his conversations with the defendant. No recordings were initially made because of technical problems. On June 18, 1992, the police, through Filipelli, tried to get the defendant to speak on the telephone so that they could record the conversation. He refused to come on the line to speak to the "guys . . . going to do the hit." The defendant instead drew a detailed map on a napkin or paper towel with directions to Lamb's house

and gave it to Filipelli so that directions could be given over the telephone. The map also included a physical description of Lamb.

On June 22, 1992, a tape recorder was concealed on Filipelli's body and he taped a forty-five minute conversation that he had with the defendant.

## I

The defendant claims that the trial court improperly refused to admit into evidence a portion of that forty-five minute tape. He claims that the court (1) abused its discretion and (2) violated his due process rights as guaranteed by the fourteenth amendment to the United States constitution, and article first, § 8, of the Connecticut constitution,[3] in that the court interfered with his right to present a defense.

## A

Prior to placing Filipelli on the stand as a witness, the state indicated to the trial court that it intended to offer the entire forty-five minute tape recording into evidence. The defendant objected, claiming that the recording was so defective, garbled and inaudible as to be misleading to the jury. In the absence of the jury, the trial judge listened to the tape recording. The judge noted that he had seated himself in the jury box so that he could listen to the tape from the jury's position and vantage point. The cassette recorder was placed next to the judge. After listening to the entire tape recording, the judge stated that the tape was very difficult to hear and was "quite garbled." The judge then noted that the conversation on the tape became more discernible toward the end of the tape where the defendant stated "[i]t was Lamb who got the ball rolling."

---

[3] The defendant has failed to provide a separate analysis of his claimed rights under the Connecticut constitution. We will therefore consider only his claims under the federal constitution. *State* v. *Mercer*, 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988).

Following the state's offer into evidence of the entire tape, the court indicated that it was inclined to let in only the portion at the end of the tape where the conversation was clearer and more discernible.[4] At that point, the defendant argued that if the court was going to allow in part of the tape, it should allow in the entire tape. The defendant alleged that the more discernible parts of the tape were damaging to him while portions of the "garbled" conversations contained evidence favorable to him, and he should be allowed to explain what was said on the entire tape. The court noted that, even though it was allowing only a portion of the tape in, it was not precluding the defendant from referring to other portions of the tape if necessary. The court felt that admitting the entire tape would not be helpful to the jury.

The court then admitted into evidence the latter portion of the tape that the court had deemed audible. Thereafter, during the defendant's testimony, the entire tape, including that portion not admitted as a full exhibit, was marked for purposes of identification. Parts of the excised tape were played in the jury's presence, with the permission of the trial court.

The defendant thereafter offered the tape as a full exhibit, claiming that the beginning portion of the tape was necessary to put the conversation in context. He claimed that the dialogue in the beginning portion showed that he knew Filipelli was a "snitch" and, there-

---

[4] The court stated the following: "As I pointed out earlier . . . this tape is generally—at least the . . . beginning portion of it—is in quite a fuzzy state. It is very difficult to discern what is being said. There are loud noises in the background. It is hazy. It is very difficult to try to ascertain what is being said. As the tape progressed and toward the end there was a colloquy that started with . . . the defendant speaking, '[t]hat it was Lamb [who] got the ball rolling.' I think at that point the tape becomes clearer. I think from that point, that the conversation is relevant. That is discernible. The court is inclined . . . to let that portion of the tape be heard to the end."

fore, any seemingly incriminating statements made in the latter portion could not be taken seriously. The court noted: "Well, we're running into an on-going problem with this tape. And the court made an initial ruling that the portion that has not been allowed in is very difficult to hear. It's somewhat inaudible. There is a lot of background noise to it. And I think would pose a problem to the jury in hearing the tape. Now you've both pretty much elicited portions of the unintroduced aspect of the tape through testimony. [Defense counsel] introduced, through this witness, those conversations. You have that in evidence. It doesn't eliminate the problem that the court has with what it perceives as difficulty for the jury to hear these portions. And this is like whittling away, I think, at the court's initial ruling, which was not to allow that beginning portion of the tape because of the problems of that. And the court is still inclined to that. And you have, on the other hand, you have been allowed to introduce testimony you seek as to that subject matter. The jury has that before them." The court refused to admit the entire tape as a full exhibit.

During jury deliberations, the jury twice requested to hear excerpts from the excluded portion of the tape. The court replayed both excerpts for the jury.

The state's position throughout the trial was to have the entire tape admitted. The defendant sought to have the entire tape excluded. He does not now challenge the admitted portion, but rather claims that all portions not admitted should have been because they might have aided in placing his subsequent conversation in context. The defendant concedes that he was in no way limited on the cross-examination of any witness, that transcripts of the excluded portions of the tape were obtained and introduced, and that he was allowed to play excerpts of the excluded portion of the tape in the presence of the jury when examining witnesses who

were speaking or being spoken to on the tape. The defendant was also allowed to admit as a full exhibit one excerpt from the contested portion of the tape during his cross-examination of the police detective who was the investigating officer. The defendant was further permitted to comment on the excised portion of the tape during his closing argument to the jury. The defendant agrees that while he and Filipelli could understand some brief parts of the excluded portion of the tape because they had been present, it would be extremely difficult for the jury to discern what was being said, or by whom.

Whether a recording, or part of a recording, should be admitted into evidence is a question to be determined within the discretion of the trial court. *State* v. *Hauck*, 172 Conn. 140, 149, 374 A.2d 150 (1976). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Carr*, 172 Conn. 458, 464, 374 A.2d 1107 (1977).

In light of the trial court's precautions and the latitude afforded the defendant, we find no abuse of the court's discretion. Our review of the record leads us to conclude that the defendant placed before the jury all that he wanted other than the unintelligible excised portions of the tape itself. He had, in the transcripts and testimony, the benefit of a functional equivalent of that evidence, and the excised portion was at best cumulative. See *State* v. *Correia,* 33 Conn. App. 457, 463, 636 A.2d 860, cert. denied, 229 Conn. 911, 642 A.2d 1208 (1994) (holding that trial court did not abuse its discretion when it refused to admit witness' statement as full exhibit because defense counsel was

allowed to read statement to jury and any further evidence would have been cumulative). We see no purpose in subjecting the jury to long portions of static or unintelligible gibberish, when anything that was possibly discernible was allowed through testimony or transcript. The trial court carefully reviewed the tape. In addition to our conclusion that the trial court did not abuse its discretion, we also conclude that the defendant was not prejudiced by the procedure employed by the court.

## B

The defendant argues that the trial court's ruling interfered with his constitutional right to present a defense. We do not agree. "When defense evidence is excluded on evidentiary grounds, such exclusion may give rise to a claim of denial of the right to present a defense. *Chambers* v. *Mississippi*, 410 U.S. 284, 289–90, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)." *In re Adalberto S.*, 27 Conn. App. 49, 57, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992). A defendant is bound by the rules of evidence in presenting a defense. *State* v. *Kelly*, 208 Conn. 365, 375–76, 545 A.2d 1048 (1988). The right to present a defense is subject to appropriate supervision by the trial court in accordance with established rules of procedure and evidence. *State* v. *Carter*, 228 Conn. 412, 426–27, 636 A.2d 821 (1994). The fourteenth amendment to the United States constitution does not require that the defendant be permitted to present every piece of evidence that he wants to present. *State* v. *James L.*, 26 Conn. App. 81, 83, 598 A.2d 663 (1991). As previously discussed, the evidence that was presented was the functional equivalent to the excised portion of the tape. Furthermore, the defendant's theory of defense was that he did not commit the crime because he knew that Filipelli was a snitch. Our review of the record discloses

that the trial court more than adequately allowed the defendant to get his claimed defense before the jury.

## II

The defendant next claims that the trial court failed, in instructing the jury, to relate adequately the issues of law to the facts of the case, in violation of his state[5] and federal constitutional rights to due process. While conceding that this claim was not properly preserved, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Pursuant to *Golding*, a defendant can prevail on an unpreserved claim only if all of the following criteria are met: ''(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.'' Id., 239–40.

The state concedes, and we agree, that the defendant has met the first two prongs of *Golding*. We cannot conclude, however, that an alleged constitutional violation clearly exists and, therefore, we conclude that the defendant has failed to meet the third prong of *Golding*.

We first must disagree with the defendant's position that a trial court, in instructing a jury, has an absolute duty to comment on the evidence. The court may, under appropriate circumstances, exercise its discretion and choose not to comment on the evidence. *State* v. *Hernandez*, 218 Conn. 458, 462, 590 A.2d 112 (1991). Whether the trial court's charge *adequately* relates the issues of law to the facts of a case depends on the par-

---

[5] See footnote 3.

ticular circumstances of that case. We have recently decided four cases involving this issue. In *State* v. *Lemoine*, 33 Conn. App. 743, 641 A.2d 131, cert. granted, 230 Conn. 909, 644 A.2d 920 (1994), and *State* v. *Wolff*, 29 Conn. App. 524, 616 A.2d 1143 (1992), we determined on the basis of the particular circumstances of each case that the courts' instructions failed to relate adequately the issues of law to the facts of the case. In *State* v. *Shanks*, 34 Conn. App. 103, 640 A.2d 155 (1994), and *State* v. *Crosby*, 36 Conn. App. 805, 814, 654 A.2d 371 (1995), we determined otherwise.

Our review of the entire charge in this matter leads us to conclude that the court's instruction did not mislead the jury, and that in this matter the contents of the instructions more closely parallel those in *Shanks* and *Crosby*. This matter did not involve complex factual or legal issues and did not require extensive comment on the evidence by the trial court. The trial court instructed that there were two crimes and two victims, and that each crime was separate and distinct. The court particularized which count pertained to which victim. The instructions were thorough, the information and the relevant statutes were read, and the law explained. Indeed, the jury was quite capable of separating the two counts as can be seen from the acquittal on the second count. Because we cannot determine that the alleged constitutional violation clearly exists, we conclude that the defendant has failed to meet the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.