## STATE OF CONNECTICUT *v.* JAMIE PETTWAY
## (12386)

O'Connell, Foti and Heiman, Js.

Argued May 26—decision released August 29, 1995

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Nicholas J. Bove, Jr.,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction,[1] rendered after a jury trial, of robbery in the first degree in violation of General Statutes (Rev. to 1991) § 53a-134 (a) (4) and General Statutes § 53a-133.[2] The defendant claims that the trial court improperly (1) denied his motion to suppress identification evidence, (2) failed to grant a mistrial, (3) refused to

---

[1] The defendant's motion for judgment of acquittal was granted as to one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a), 53a-133 and 53a-134 (a) (4).

[2] General Statutes (Rev. to 1991) § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

allow evidence offered by him, and (4) instructed the jury on the issues of identification, flight and reasonable doubt. The defendant also claims that the evidence was insufficient to support a conviction. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 22, 1992, at approximately 10:05 p.m., the victim, Henry Forte, drove to a gas station on North Main Street in Bridgeport and began pumping gas at a self-service pump. At that time, he noticed the defendant and a second man watching people at the cashier's booth. The two men approached the victim. The defendant took the gas pump from the victim's hands and dropped it on the ground, saying, "My friend has a gun, we want your money, hand over your wallet." The second man motioned with his hand under his jacket as if he had a gun. The victim then gave the wallet to the defendant, who removed $260 from it, and the two men then ran from the scene. The robbery was committed in approximately two minutes. The victim called 911 and gave a description of the two men. The police arrived at the scene within ten minutes and, approximately ten minutes later, another police car arrived. When the defendant was removed from the backseat of the second car stating that he had not committed the crime, the victim identified him as the person who had robbed him and also stated that he recognized the defendant's voice. The victim also identified the shirt the defendant was wearing as being the same type of shirt worn by the robber. The defendant was placed under arrest. He had $110 in his possession, consisting of one $50 bill and three $20 bills. The money taken from the victim consisted of one $50 bill, several $20 bills, one $10, one $5 and some $1 bills.

I

A

The defendant first argues that the trial court improperly denied his motion to suppress the out-of-court iden-

tification in violation of his constitutional right to due process.[3] He claims that the identification should have been suppressed because the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification in violation of the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. The trial court denied the defendant's motion to suppress the victim's out-of-court identification after a full evidentiary hearing. We agree with the determination of the trial court.

"It is well settled that [in] determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances." (Internal quotation marks omitted.) *State* v. *Monteeth*, 208 Conn. 202, 206, 544 A.2d 1199 (1988). It is the defendant's burden, as the party moving to suppress identification evidence, to establish that the identification resulted from the use of an unconstitutional procedure by the police. *State* v. *Carswell*, 36 Conn. App. 336, 341, 650 A.2d 924 (1994). Our review of the record leads us to conclude that the trial court acted properly in denying the defendant's motion to suppress.

The facts presented at the hearing and relevant to this issue are as follows. The victim was approached by two men. One man stood directly in front of him and the other, the defendant, stood at the victim's side.

---

[3] There was no objection made to an in-court identification of the defendant by the victim. The defendant argues, however, that if the out-of-court identification was inadmissible, then the in-court identification must also be inadmissible.

The victim looked directly at the defendant's face. The gas station was very well lit, and the defendant was approximately two to three feet away from the victim during the robbery. The defendant was wearing a red flannel shirt, which was unbuttoned, over a white T-shirt, and sneakers. The victim believed that the defendant's pants were jeans. The other man wore a khaki or dark blue-green parka, jeans, and a fur hat. After the two men ran, the victim called the police and gave a description of both of them.

Bridgeport police officer Victor Diaz was patrolling with Sergeant Mathew Cuminotto in the Beardsely Terrace-Trumbull Avenue area, and they responded to a report of an armed robbery at Main and Overland Streets. The broadcast included a description of two black males, one wearing a hat and the other wearing a red shirt. The two men ran down Overland Street toward Beardsely Terrace. Diaz and Cuminotto drove toward the location of the robbery, stopping at the corner of Chopsey Hill and Trumbull Avenue because they observed two men who matched the description walking across the street. One of the men had a fur hat. When the officers approached the two men, the one wearing the hat ran into the woods and the other, the defendant, kept walking toward the police car. The officers pulled alongside the defendant and stopped to talk with him. Cuminotto asked the defendant to go back to the robbery scene with them. The defendant was cooperative and accompanied the police without any resistance. The defendant was frisked for weapons, but was neither handcuffed nor under arrest at that time, and he was wearing a white shirt with a reddish tinge. It had been raining and the defendant appeared to be perspiring.

The officers brought the defendant to the scene in a police car within twenty minutes of the robbery. At that time, the defendant was wearing only a T-shirt and jeans. The police told the victim that they had apprehended a

suspect and asked the victim to identify him. When the defendant exited the police car, the victim walked past him and heard him speaking. Once he saw the defendant and recognized his voice, the victim knew that he was the robber. The victim testified that he was positive that the defendant was the robber.

The sole purpose of the suppression hearing was to determine the validity of the one-on-one identification. The defendant's counsel argued that the identification procedure was both unnecessarily suggestive and unreliable. The court denied suppression, ruling that the identification procedure did not result in a substantial likelihood of irreparable misidentification. The defendant sought an articulation of that ruling and also asked the court to decide whether the defendant's detention had been illegal. The articulation reviewed the evidence adduced at the hearing and stated the principles of law relevant to the suppression of identification procedures. The court articulated that the show-up identification was suggestive but not unnecessarily so because it "was necessary to eliminate possible innocent parties and to provide Forte with an opportunity to identify his assailants while his memory was fresh." The court further found on the basis of the totality of the circumstances that the identification was reliable. The court made no findings concerning either the factual basis for, or the legality of, the defendant's return to the scene for the identification.

A one-on-one identification is inherently suggestive; *State* v. *Mitchell*, 204 Conn. 187, 201, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987); it conveys the message that the police have reason to believe the suspect is guilty. *State* v. *Maturo*, 188 Conn. 591, 596, 452 A.2d 642 (1982). While such a show-up, or one-on-one confrontation, may be suggestive, it does not necessarily follow that such a procedure is impermissibly or unnecessarily suggestive. *State* v. *King*,

35 Conn. App. 781, 786, 647 A.2d 25, cert. granted, 231 Conn. 937, 650 A.2d 174 (1994); see *State* v. *Mitchell,* supra, 201.

In the present case, the defendant was brought to be viewed by the victim after the victim was told by the police that "we caught the person, we're going to have you identify him." This could possibly have led the victim to conclude that the police believed the suspect to be the robber. See *State* v. *Tatum,* 219 Conn. 721, 727, 595 A.2d 322 (1991). Thus, we disagree with the trial court that the initial identification procedure was not impermissibly suggestive.

The next inquiry under the two-pronged approach is whether the identification, in the context of the totality of the circumstances, was nevertheless reliable. "In determining whether an identification is reliable in the totality of circumstances, the corruptive influence of the suggestive procedure is weighed against the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation." (Internal quotation marks omitted.) *State* v. *Pollitt,* 205 Conn. 132, 164, 531 A.2d 125 (1987). This inquiry is fact-bound, made on an ad hoc basis, and the court's decision is not to be reversed unless there is clear and manifest error. *State* v. *King,* supra, 35 Conn. App. 788.

We are satisfied, after our review of the record, that the trial court correctly concluded that the identification was reliable under the totality of circumstances. The court considered the victim's opportunity to view the criminal at the time of the crime, the distance between the victim and the defendant, the lighting at the scene of the crime, the certainty of the identification, the length of time between the incident and the one-on-one con-

frontation, and the voice recognition, along with the victim's description of the defendant's clothing and general appearance. Under these circumstances, we must conclude that the trial court properly denied the defendant's motion to suppress.

## B

The defendant also argues on appeal that he was seized without reasonable and articulable suspicion, and the resulting identification was the product of the illegal seizure. Our review of the record, however, discloses that the only issue raised by the defendant as part of his motion to suppress was the validity of the identification procedure. The defendant concedes that the issue of illegal seizure was not raised in his motion to suppress,[4] and the trial court was not alerted as to this issue during the evidentiary hearing. The defendant does not concede that this claim was not properly preserved. In the alternative, however, he argues that if the preservation is deemed insufficient, we should review pursuant to *Evans-Golding*. *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). We decline to review this claim because the defendant has not satisfied the first prong of *Golding*, namely, that the record is adequate to review the alleged claim of error. *State* v. *Golding*, supra, 239–40.

Whether a person in an individual case has been "seized" so as to invoke the protection of the fourth amendment is a question of fact. *State* v. *Ostroski*, 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982); *State* v. *Ostroski*, 184 Conn. 455, 458, 440 A.2d 166 (1981). The defendant argues that he was seized and that the seizure was not

---

[4] The defendant's motion to suppress, while alluding to the fourth amendment to the United States constitution, asks for the suppression of identification evidence "as fruits of improper, unreliable, and unnecessarily suggestive identification procedures."

based upon a reasonable and articulable basis of suspicion. Whether there exists a reasonable and articulable suspicion depends on the totality of the circumstances. *State* v. *Ober*, 24 Conn. App. 347, 353, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, 135, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 26 (1991). Review of a trial court's determination of whether a reasonable and articulable suspicion exists "involves a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." *State* v. *Kyles*, 221 Conn. 643, 660, 607 A.2d 355 (1992). The trial court must consider whether, in light of the totality of the circumstances, the police had a particularized and objective basis for suspecting that person of criminal activity. *State* v. *Harrison*, 30 Conn. App. 108, 112, 618 A.2d 1381 (1993). The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts found. *State* v. *Pierog*, 33 Conn. App. 107, 112, 634 A.2d 301 (1993). The trial court found no facts and made no conclusions in this regard. The record is not adequate to review this claim. Because the defendant cannot satisfy the first prong of *Golding*, we decline to review this claim.

II

The defendant next claims that the trial court improperly denied his motion for a mistrial. We disagree.

On the second day of trial, the trial judge heard the telephone ringing in his chambers. Thereafter, he told the jury that he assumed it had been his wife calling because he had asked her to call at that time. He expressed his concern that she might be worried at his failure to answer the telephone at the appointed time, and stated to the jury "I'm sure she thinks someone is here spraying me with machine-gun fire, so I'm going to

go call her and assure, you know . . . so for that reason, I am going to take a short recess for that purpose."

When court resumed after the weekend, the defendant's counsel moved for a mistrial. The court denied the motion, but agreed to give a curative instruction, prepared by the defendant, even though the court expressed its belief that there had not been any prejudice from the remark. In its final instruction, the court stated to the jury: "Now it occurs to me that at one point in the trial I said something to you before one of our breaks that I should briefly comment upon. I believe that I mentioned I was waiting for a call from my wife, and words to the effect she may be concerned for me because I was sitting in Bridgeport. I want to assure you ladies and gentlemen, as I'm sure you know, that my comment had absolutely nothing to do with the facts of this case; the state's position, the defendant's position, the presumption of innocence that a defendant is entitled to, or the state's burden of proving the defendant guilty beyond a reasonable doubt." The defendant did not object to the instruction.

"[A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . On appeal, the defendant bears the burden of establishing that the occurrence was so prejudicial, in the context of the trial as a whole, that it denied him a fair trial. . . . The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Traficonda*, 223 Conn. 273, 282, 612 A.2d 45 (1992). The trial court also has broad discretion in determining whether the defendant was prejudiced. See *Speed* v. *DeLibero*, 215 Conn. 308, 315, 575 A.2d 1021 (1990); *State* v. *Leonard*, 31 Conn. App. 178,

195, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993).

The defendant argues that "it is impossible to imagine the machine gun comment would not impact upon the jury and taint the proceedings." We do not agree. The defendant has failed to sustain his burden of demonstrating that the comment so prejudiced the jury as to deny him a fair trial. While the comment was not appropriate, particularly given the fact that it was made during a robbery trial, the court's misplaced attempt at levity does not warrant the extreme measure of a mistrial. Further, the court's instructions were curative on the point.

### III

Next, the defendant claims that the trial court improperly violated his state and federal constitutional rights to present a defense[5] by refusing to allow evidence in the form of testimony about the clothing the defendant was wearing when he entered the jail after his arraignment on November 23, 1992, the day after the crime. The defendant attempted to elicit testimony from three witnesses that the clothing worn by the defendant the day after the crime differed from the clothing described by the victim as worn by the robber. The trial court sustained the state's objection to this testimony on the basis of relevancy. The court stated that, unless it could be shown that the defendant had not changed his clothes from the time of the arrest to the time of his arrival at the jail the next day, the testimony would be excluded.

Questions concerning the relevance of evidence are left to the discretion of the trial court and will not be disturbed unless the court has clearly abused that discretion in its resolution. *State* v. *Fritz*, 204 Conn. 156, 167–68, 527 A.2d 1157 (1987). It is the court's right, and its

---

[5] The defendant's claim is under the fifth, sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution.

duty, to exclude irrelevant evidence. *State* v. *Daniels*, 8 Conn. App. 190, 194, 512 A.2d 936 (1986). We agree that when evidence is excluded on evidentiary grounds, that exclusion may give rise to a claim of denial of the right to present a defense. *State* v. *Riddle*, 36 Conn. App. 821, 828, 654 A.2d 784 (1995). However, "[t]he right to present a defense is subject to appropriate supervision by the trial court in accordance with established rules of procedure and evidence. *State* v. *Carter*, 228 Conn. 412, 426–27, 636 A.2d 821 (1994)." Id. The right to present a defense includes the right to present witnesses, and in exercising this right, the defendant is still bound by the rules of evidence. *State* v. *Kelly*, 208 Conn. 365, 375–76, 545 A.2d 1048 (1988).

Evidence is admissible when it either tends to establish a fact in issue or to corroborate other direct evidence in the case. *State* v. *Alvarez*, 216 Conn. 301, 304, 579 A.2d 515 (1990). One fact is relevant to another when, "according to the common course of events, the existence of one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." Id. The defendant argued that the evidence of what he wore the day following his arrest was relevant to the victim's credibility. He argued that the evidence would lead the jury to question the victim's description of the clothing worn by the defendant on the day of the crime. The existence of one fact, what the defendant wore the day following his arrest, does not make certain or more probable the existence of the other fact, that the clothes worn the previous day were different, absent some evidence to connect the two such as testimony that the clothes had not been changed in the meantime. The evidence was properly excluded as not relevant.

IV

It is the defendant's contention that the trial court improperly instructed the jury on the issues of identifica-

tion, reasonable doubt and flight as consciousness of guilt. The defendant argues that by failing to charge as requested, the trial court violated the defendant's right to due process. We disagree.

## A

The defendant, through counsel, submitted a thirteen page request to charge. He sought specific language on the issue of identification.[6] On appeal, the defendant argues that the charge as given was inadequate in that it failed to include his requested language that the state must prove identity beyond a reasonable doubt.

"In a criminal proceeding, there is no duty to charge the jury in the identical language requested as long as the

---

[6] The defendant's request to charge on the issue of identification provided: "Ladies and Gentlemen, you have heard testimony from Mr. Henry Forte in this case. The vagaries of eyewitness identification are well known and you should receive with caution any identification testimony from an eyewitness and consider carefully whether or not that witness is accurate in his belief and his testimony. You should scrutinize with care all such eyewitness identification. You should consider what opportunity Mr. Forte had to make an observation, whether or not he had seen the defendant before and all of the other circumstances surrounding such observation. Eyewitness identification is sometimes unreliable but its weight like the weight of any testimony is ultimately for you to decide.

"Therefore, Ladies and Gentlemen, the State has the burden of proving identity beyond a reasonable doubt. You the jury must be satisfied beyond a reasonable doubt of the accuracy of the identification of an accused before you can convict him. If you are not convinced beyond a reasonable doubt that the defendant, Jamie Pettway, was the person who committed the offense, then you must find him not guilty. In this case, Ladies and Gentlemen, you have heard testimony from Mr. Forte concerning the fact that he was really tired the evening of the incident. [Mr. Forte] also stated that this incident was a very stressful and frightening experience. You also heard him say that he received certain information from one of the arresting officers before he made his identification. In addition, you heard several conflicts in his testimony with regard to the clothing worn by the people who robbed him. I will instruct you Ladies and Gentlemen that it is proper for you to consider these or any other factors and circumstances that could affect Mr. Forte's identification of Mr. Pettway. As I have already charged you, it is for you alone to determine the [weight] of such testimony in your determination whether the State has met its burden of proving the identity of Mr. Pettway beyond a reasonable doubt."

charge is accurate, adequate and its substance properly includes material portions of the defendant's request." *State* v. *Suarez*, 23 Conn. App. 705, 710, 584 A.2d 1194 (1991). Our review of the charge that was given in the present case demonstrates that it meets these standards. Throughout the charge, the court emphasized that the state's burden was to prove the defendant guilty beyond a reasonable doubt, that they should acquit him unless they were satisfied beyond a reasonable doubt of his guilt, and that the defendant was presumed to be innocent and did not have to put on any evidence or prove anything. In charging on the elements of each crime, the court told the jury that they must first determine whether the defendant committed the crime, or whether the accused was the one guilty of the crime charged. The court finally instructed the jury that "[w]hen you go into the jury room to deliberate on the evidence in this case you should ask yourself this question: Am I convinced beyond a reasonable doubt of the guilt of the particular accused charged in this information?"

The court also instructed at length as to the jury's function when dealing with the credibility of the witnesses and the weight to be given their testimony. The court specifically charged: "On the issue of identification, you should take into account the following: You should consider whether or not the victim had the opportunity to observe the features which he described in court, the conditions under which he made those observations, the time he had to view the perpetrator of the crime, and the distance between him and the perpetrator of the crime, whether the witness knew the person before the identification. You should also consider the description which he gave to the police, and the length of time between the giving of that description and the incident in question.

"You should also take into account the circumstances under which he first viewed and identified the defendant,

the suggestibility or lack of suggestibility of that procedure used in viewing, and all other facts which you find relating to the reliability or lack of reliability of the identification of the accused."

While the court did not refer to the witnesses by name or review the testimony of each, the substance of the defendant's request as it related to identification was conveyed to the jury, thereby fulfilling the court's obligation. See *State* v. *Delgado*, 13 Conn. App. 139, 145, 535 A.2d 371 (1987).

B

The defendant submitted a request to charge dealing with flight as evidence of consciousness of guilt. The defendant requested that the jury be reminded that he had not fled when the officers approached him and that they could consider that fact as evidence consistent with consciousness of innocence.[7] The defendant's requested instructions were given, along with other instructions.[8] On appeal, the defendant claims that the instruction on

[7] The defendant's request to charge provided: "In cases where a suspect has fled from the scene of a crime, such flight may be considered as evidence of a consciousness of guilt in the mind of the suspect. In this case there has been evidence presented that [the defendant] did not flee when police officers approached him on November 22, 1992. You may consider this evidence of absence of flight as evidence which is consistent with [the defendant's] consciousness of innocence."

[8] The trial court instructed the jury as follows: "Flight when unexplained tends to prove a consciousness of guilt. The flight of an accused from a crime is a circumstance which, when considered together with all of the facts of the case, may justify a finding of the defendant's guilt. . . . If you find that the defendant was fleeing from the scene of a robbery, you may consider it as evidence of his consciousness of guilt. . . . It is up to you to give the evidence the weight to which you think it is entitled.

"Now in cases where a suspect had fled from the scene of a crime, such flight may be considered as evidence of consciousness of guilt in the mind of the suspect. In this case, there has been evidence that [the defendant] did not flee when the police officers approached him after the alleged robbery . . . . You may consider this evidence of absence of flight from the police officers as evidence which is consistent with [the defendant's] consciousness of innocence."

flight was confusing in that it referred to both flight from the scene of the crime and flight from the police officers at the time of the apprehension.

We find that the defendant's claim is without merit. The trial court was not obligated to give the defendant's requested instruction. This court has previously upheld the trial court's refusal to give a similar instruction, finding no support in law for such a request. See *State* v. *Jennings*, 19 Conn. App. 265, 273, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989). Here, the trial court chose to give the instruction as requested by the defendant. In fact, the instruction included language identical to language contained in the defendant's request. The remainder of the instruction on flight conformed to our case law. On the basis of our review of the entire instruction, we find that the instruction was not confusing to the jury.

C

The defendant requested an extensive charge on reasonable doubt. He added that he objected to any language that described reasonable doubt as one for which a jury can assign a reason or one that a person would act upon or would be willing to act upon or pay heed and attention to. The trial court's charge on reasonable doubt, while it did not contain the "assign" language, contained the description of a reasonable doubt as one "which in the serious affairs which concern you in everyday life, you would pay some heed or attention to." The defendant alleges that this instruction diluted the state's burden of proof.

When reviewing the challenged jury instruction, we must "determine whether, taken as a whole, [the charge] fairly and adequately present[s] the case to [the] jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Taylor*, 37 Conn. App. 464, 469,

657 A.2d 659 (1995). The court's instructions concerning reasonable doubt are the same or similar to jury instructions that have been consistently approved by this court and by our Supreme Court. *State* v. *Goodman*, 35 Conn. App. 438, 442, 646 A.2d 879, cert. denied, 231 Conn. 940, 653 A.2d 824 (1994). When viewed in the context of the entire charge, the challenged instructions did not lessen the state's burden to prove the defendant guilty beyond a reasonable doubt. See *State* v. *Crosby*, 36 Conn. App. 805, 815, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995); *State* v. *Leonard*, supra, 31 Conn. App. 178.

V

The defendant's final claim is that the evidence was insufficient to support a conviction for robbery in the first degree. We disagree.

The charging document in this case alleged that the defendant, in the course of the robbery, "displayed what he represented by his words or conduct to be a firearm." Following the presentation of evidence, the defendant moved for a judgment of acquittal. The defendant argued that it had not been proven that he displayed a firearm. Following the denial of the defendant's motion, the state filed a supplemental request to charge that added the statutory language "he or another participant in the crime . . . displays or threatens the use of what he represents by his words or conduct to be a . . . firearm."[9]

On appeal, the defendant argues that the state charged the commission of the crime in a limited manner in both

---

[9] The state's supplemental request to charge provided: "Robbery in the first degree is defined as follows in [§] 53a-134 (a) (4): 'A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.' "

the information and the bill of particulars. He argues that, therefore, the state was limited to proving that the defendant committed the robbery "in substantially the manner described," and that the state failed to prove that the defendant "displayed what he represented by his words or conduct to be a firearm." He further argues that he was prejudiced in his defense as a result of a material variance between the allegations in the bill of particulars and the proof at trial.

Under the United States constitution and the Connecticut constitution,[10] a criminal defendant has "the right to be informed of the nature of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." (Internal quotation marks omitted.) *State* v. *Scognamiglio*, 202 Conn. 18, 22, 519 A.2d 607 (1987). Displaying or threatening the use of what a defendant represents to be a firearm are two methods of committing the same crime. See *State* v. *Franko*, 199 Conn. 481, 488, 508 A.2d 22 (1986). The defendant's conviction under either theory would bar a subsequent prosecution for the same offense. Therefore, for the defendant to establish an infringement of his constitutional rights, he must demonstrate that he was unfairly surprised or prejudiced in the preparation of his defense. Id., 490. We conclude that the defendant has failed to demonstrate either in this case.

During the preliminary instructions to the jury the court read the information, which accused the defendant of robbery in the first degree and gave the statutory citation. The court thereafter read the statute, which

---

[10] The relevant constitutional provisions are the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

contains the words "he or another participant . . . *displays or threatens the use* of what he represents by his words or conduct to be a pistol, revolver . . . or other firearm . . . ." (Emphasis added.) In describing the elements of the crime, the court again indicated that the defendant had to have *"displayed or threatened the use of what he represented to be a firearm."*[11] (Emphasis added.)

During its final instructions, the court explained that the charge under the statute meant that "[the defendant] or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a [firearm]." Thereafter, the court instructed that the state was required to prove, under the information, that "the defendant . . . displayed or threatened the use of what the defendant represented by his words or conduct to be a pistol, revolver . . . or other firearm. . . . The statute requires only that he or another participant displayed or threatened the use of what he represented to be a firearm. . . . 'Represented' means that he indicated without necessarily displaying it that he had a firearm." The defendant did not object to these instructions. Also, the defendant did not object to the introduction of evidence that he had threatened the use of what he represented to be a firearm in the possession of his accomplice. The trial court's instructions, along with the defendant's failure to object to the evidence, negates any claim of unfair surprise.

Although the information alleged that the defendant had violated § 53a-134 (a) (4) by the display of what he represented to be a firearm, it is clear that the state presented evidence sufficient to support a conviction

---

[11] Although the preliminary instructions cannot take the place of the detailed final instructions, we cite these only to demonstrate that the defendant may not claim surprise by the final instructions or that his defense was prejudiced by the evidence being on a slightly different theory than as charged in the information.

under the alternate statutory theory, i.e., that he threatened the use of what he represented by his words or conduct to be a firearm. See *State* v. *Franko*, supra, 199 Conn. 492. We view this as a variance between the pleadings and the proof. There was sufficient evidence to convict on the uncharged theory with no lack of proper notice nor prejudice to the defendant. Id., 493. "The state could properly have moved during trial for permission to amend the information to conform with this . . . proof [regarding the threatened use of what the defendant represented to be a firearm]. Practice Book § 624. In the absence of prejudice to the defendant, the trial court would have been justified in permitting such an amendment . . . ." Id., 492.

We conclude that the evidence was not insufficient to convict the defendant of the crime charged.

The judgment is affirmed.

In this opinion the other judges concurred.